**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                  Plaintiff,

          -against-

EMPIRE CONTROL ABATEMENT, INC.,
VICTOR CUEVA, METROPOLITAN
TRANSIT AUTHORITY, THE
LONG ISLAND RAILROAD, STATION PLAZA
I LLC, 3RD TRACK CONSTRUCTORS, and
GATEWAY DEMO/CIVIL CORP.

                  Defendants.

**MEMORANDUM OF
DECISION & ORDER**

21-CV-953 (GRB)(JMW)

----------------------------------------------------------------X

EMPIRE CONTROL ABATEMENT. INC.,

                  Third-Party Plaintiff,

          -against-

PROFESSIONAL RISK PLANNERS, INC.,
and PAUL DEMASI

                  Third-Party Defendants.

**MEMORANDUM OF
DECISION & ORDER**

21-CV-953 (GRB)(JMW)

----------------------------------------------------------------X

**Appearances:**

Maureen E. O'Connor
L'Abbate Balkan Colavita & Contini
*Attorneys For Plaintiff*
3 Huntington Quadrangle
Suite 102-S
Melville, NY 11747

Adam A. Perlin
Kaufman Dolowich & Voluck, LLP
*Attorneys for Defendant Empire Control Abatement, Inc.*
135 Crossways Park Drive
Suite 201

1

Woodbury, NY 11797

Christine G. Shyu
Cullen & Dykman LLP
*Attorneys for Defendants MTA,*
*LIRR, Station Plaza I, LLC, 3rd*
*Track Constructors, and Gateway*
*Demo/Civil Corp.*
One Battery Park Plaza, 34th Floor
New York, NY 10004

Ryan M. Soebke
Cullen & Dykman LLP
*Attorneys for PRP & Paul DeMasi*
333 Earle Ovington Boulevard
Ste 2nd Floor
Uniondale, NY 11553

**GARY R. BROWN**, **United States District Judge:**

*"But the hand that struck my eyes was mine, mine alone—no one else—I did it all myself!"*
*-Sophocles, Oedipus Rex*

Currently before the Court in this action, which involves alleged unpaid premiums and resultant coverage questions in connection with two commercial insurance policies, are cross motions for summary judgment between: (1) plaintiff American Empire Surplus Lines Insurance Company ("American Empire") and defendant Empire Control Abatement ("ECA"); (2) third-party plaintiff ECA and third-party defendant Professional Risk Planners ("PRP"); and (3) plaintiff American Empire and defendants 3rd Track Constructors, and Gateway Demo/Civil Corp (collectively, "Coverage Defendants").

**BACKGROUND**

The following facts, unless otherwise noted, are taken from the parties' Rule 56.1 Statements of Undisputed Material Facts:

*The Policy Procurement*

Between 2003 and 2020, PRP[1] was ECA's insurance and surety broker. *See* PRP Counterstatement, Docket Entry ("DE") 125-1 at ¶ 11. While PRP procured policies for ECA on a yearly basis throughout the course of their relationship, the parties never executed a written contract outlining their respective obligations. *Id.* at ¶ 15. The parties conducted annual pre-renewal meetings to ensure ECA's operations and insurance requirements had not materially changed. *Id.* at ¶ 17. In April 2018, the parties began corresponding about procuring new policies as ECA's policies were set to expire on June 26, 2018. *Id.* at ¶¶ 27-29. PRP informed ECA of difficulties obtaining policies for the following year and that premiums would likely be higher than in past years based on the number of claims previously filed against ECA and because ECA's work included asbestos abatement. ECA Counterstatement, DE 130-20 at ¶ 31.1.

Though the parties dispute the matters discussed prior to June 2018, it is uncontroverted that ECA's President, Lorena Alexander, and its accountant/controller, Gordon Maricevic, met with DeMasi on June 19, 2018, to discuss the policy proposals PRP had obtained from plaintiff American Empire on ECA's behalf. PRP Counterstatement, DE 125-1 at ¶ 32. Both proposals indicated that: (1) ECA's non-OCIP[2] gross receipts were projected to be $2,000,000; (2) the premium would be calculated based on that figure; (3) the policies were subject to a 25% minimum earned premium; and (4) the projected gross receipt figure was subject to audit. *See* Commercial General Liability Proposal, DE 125-10; Excess Policy Proposal, DE 125-11. Alexander avers that ECA did not provide the $2,000,000 gross receipt figure reflected in the proposals but admits that

---

[1] Defendant Paul DeMasi was the President of PRP. (Collectively, DeMasi and PRP are referred to as the "PRP Defendants.").

[2] OCIP is an acronym for Owner Controlled Insurance Program. OCIP work is excluded from the policy premium calculations as OCIP projects are performed under the protection of another entity's insurance policies. *See* American Empire Counter Statement, DE 122-1 at 16 n.1.

3

"ECA was aware that the PRP used such an estimate in the Insurance Proposal they provided." Alexander Reply Aff., DE 130-17 at ¶¶ 4-5. Alexander, on behalf of ECA, signed the Policy Proposals and American Empire issued the policies shortly thereafter. *See* DE 110; DE 111.

### *The Insurance Policies*

Plaintiff issued two policies to ECA covering the period June 26, 2018, to June 26, 2019: a Primary Policy (No. 18CG0221842) and an Excess Policy (No. 18CX0221843). ECA Counter Statement, DE 108 at ¶ 1. The premiums were to be computed as a percentage of ECA's gross receipts received from non-OCIP work. *Id.* at ¶ 2.1. ECA's gross receipts for the policy period were estimated to be $2,000,000, and American Empire thus assigned Advance Premiums in the amount $399,500 for the Primary Policy ($199.75 per $1,000 of gross receipts) and $171,830 for the Excess Policy ($89.915 per $1,000 of gross receipts). *Id.* at ¶ 4.1. The policies provide that these were "minimum premiums" that were subject to adjustment after auditing of records by American Empire. *Id.* at ¶¶ 3.1, 5.1, 6.1, 9.1. Audits could be conducted both during the policy term and for a period of up to three years after their expiration. *Id.* at ¶ 8.1.

In October of 2019, an independent auditor reported that the minimum premiums applied, a result that was initially endorsed by American Empire and relayed to ECA. American Empire Counterstatement, DE 122-1 at ¶¶ 43-44. In June of 2020, American Empire determined that a re-audit was necessary after defendant MTA filed a claim for coverage relating to a state court tort action, as this claim indicated that some of the receipts that were represented to be from OCIP work in the initial audit were potentially receipts from non-OCIP work.[3] *Id.* at ¶ 46. Following the re-audit, American Empire contended that ECA owed premiums of $2,667,405 under the Primary Policy and $1,147,285 under the Excess Policy since the receipts for OCIP work were

---

[3] *See infra* "The Cueva Action."

4

reduced from $23,932,163.82 to $10,351,973.32. *See id.* at ¶ 52; ECA Counter Statement, DE 108 at ¶¶ 10.1-11.1. ECA's actual gross receipts attributable to non-OCIP work were determined to be $15,353,717.19, well in excess of the $2,000,000 estimate in the policy proposals signed by Alexander. *See* Final Audit Endorsements, DE 102-5; DE 102-6. Despite demand for payment by American Empire, the additional policy premiums remain outstanding. ECA does not contest the gross receipt figure calculation but maintains that American Empire improperly conducted the additional audit, and that American Empire should be bound by the results of the initial audit.

### *The LIRR Expansion Project*

An "expansion project" for the Long Island Railroad generated several agreements that bear on these proceedings:

*MTA Contract 6240*

On January 8, 2018, defendant Metropolitan Transit Authority ("MTA") contracted with defendant 3rd Track Constructors ("3TC") for work on the project in New Hyde Park, New York. *See* MTA Contract 6240 ("6240 Contract"), DE 127-3. That contract provides that 3TC would maintain policies of insurance covering all operations performed by it or its subcontractors. *Id.* at 7-8.

*Subcontract 005*

Having obtained the 6240 Contract, 3TC retained defendant Gateway as a demolition subcontractor in May of 2018. *See* Gateway 3TC Subcontract 005 ("Subcontract 005"), DE 127-4. That subcontract provides that Gateway shall provide the required insurance coverage, and that any subcontractor to Gateway will be responsible for doing so. *Id.* at 8, 31.

5

*Subcontract 001*

On August 13, 2018, Gateway retained ECA as a subcontractor for asbestos abatement, waste removal, and lead removal on the project. *See* Gateway ECA Subcontract No. SC-6240-001 ("Subcontract 001"), DE 127-5. Under Subcontract 001, ECA was further obligated to obtain policies that covered additional insureds. Specifically, "[i]n addition to workmen's compensation coverage, Subcontractor shall maintain liability insurance coverage for bodily injury and property damage in such forms and in such amounts as required by the prime contract. All insurance policies shall name Owner and Contractor as additional insured's [sic]." *Id.* at 5. ECA obtained such coverage via the General Liability Policy issued to ECA by American Empire. American Empire Reply Statement, DE 128-1 at ¶ 13.

Work on the LIRR expansion project commenced during the policy period.

***The Cueva Action***

In November of 2018, Victor Cueva, an employee of ECA, was injured at the expansion project jobsite after he fell through the roof of a building upon which he was working. Coverage Defendants Counterstatement, DE 120 at ¶ 13. On June 3, 2019, Cueva filed suit in New York State Supreme Court against MTA, 3TC, LIRR, Station Plaza I LLC, and Gateway based on the injuries he sustained (the "*Cueva* Action"). Coverage Defendants 56.1 Statement, DE 118 at ¶ 1. The Coverage Defendants then impleaded ECA as a third-party defendant. Coverage Defendants Counterstatement, DE 120 at ¶ 14.

On July 3, 2019, an attorney purporting to represent defendants MTA and LIRR sent a tender letter to American Empire seeking additional insured coverage under ECA's policies. July 3 Tender Letter, DE 127-8 at 3. On August 7, 2019, American Empire denied the tender on the grounds that there was no proof at that time of negligence attributable to ECA, noting that coverage

6

for additional insureds is operative "only with respect to liability for [injuries] caused, in whole or in party, by: 1. [ECA's] acts and omissions." August 7 Denial, DE 127-9 at 3. On September 19, 2019, the same attorney responded on behalf of defendants MTA and LIRR arguing that American Empire had incorrectly denied additional insured coverage as ECA was responsible for the safety of its employees. September 19 Reply, DE 127-10 at 2-3.

On September 9, 2020, a different attorney from the same firm that previously corresponded with American Empire sent a new tender letter, but now purporting to represent Station Plaza I, 3TC, and Gateway for the first time. September 9 Letter, DE 127-11 at 2. In this communication, counsel for Coverage Defendants argued that ECA had a contractual obligation to procure policies providing for additional insured coverage for the "Contractor" and "Owner" of the project. *Id.* at 3. This argument was premised on the belief that Subcontract 001 between ECA and Gateway incorporated the entirety of Subcontract 005 between Gateway and 3TC. *See id.* at 3. According to the Coverage Defendants, under the "prime contract" Gateway is the "contractor" and 3TC is the "owner." *Id.* at 3. American Empire responded on December 11, 2020, again denying coverage, stating that even if it were to tender coverage, only Gateway and MTA would qualify as additional insureds as 3TC is not an "owner" for purposes of Subcontract 001. December 2020 Denial, DE 127-12 at 5. On December 28, 2020, the Coverage Defendants replied, again seeking coverage from American Empire. December 2020 Reply, DE 127-13. On April 28, 2022, during the pendency of this action, American Empire issued an updated coverage position agreeing to defend Gateway under a reservation of rights but maintaining its denial as to 3TC. April 2022 Letter, DE 127-14 at 2.

7

*Procedural Background*

Plaintiff American Empire commenced this action against ECA with the filing of a summons and complaint on February 22, 2021. DE 1. The initial complaint asserted causes of action for breach of contract due to ECA's failure to remit the policy premiums due, declaratory judgment that American Empire was free of its obligation to defend or indemnify ECA or additional insureds, and breach of the implied covenant of good faith and fair dealing. *See generally id.* On April 26, 2021, ECA filed an answer and asserted a counterclaim against American Empire for breach of the implied covenant of good faith and fair dealing. DE 34. Additionally, ECA sought a declaratory judgment that it had complied with its contractual duties and, thus, American Empire was obligated to defend or indemnify in the *Cueva* Action and any other actions arising within the policy period. *Id.* ECA also filed a third-party complaint against PRP asserting claims for breach of contract, contractual indemnification, common law indemnification, negligence, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. *See* Third-Party Complaint, DE 37.

On May 5, 2021, American Empire filed an amended complaint that was rejected based on procedural deficiencies. DE 48. On May 25, 2021, American Empire filed a second amended complaint which corrected the errors and was accepted by the Court. DE 50.[4] Two days later, ECA filed an amended answer asserting the same counterclaims previously asserted. DE 52. On May 27, 2021, ECA filed an amended third-party complaint against the PRP defendants. *See* DE 53. The Coverage Defendants, in turn, filed an answer to American Empire's amended complaint,

---

[4] The Second Amended Complaint seeks damages in the amount of $3,814,690 for the unpaid premiums, interest on that amount, and recovery of its fees in prosecuting this action. DE 50 at 10-11. American Empire asserts that its fees and costs total $196,213. DE 111 at 25.

asserting a counterclaim seeking a declaration that American Empire is obligated to defend 3TC and Gateway in the *Cueva* Action as additional insureds under ECA's policies. DE 63 at ¶ 91.

On May 16, 2022, American Empire filed a letter motion seeking a pre-motion conference in anticipation of filing a motion for summary judgment against ECA. DE 88. Then-Judge Denis R. Hurley waived the court's pre-motion conference requirement and directed the parties to file their fully briefed motions. *See* June 8, 2022 Electronic Order. On July 8, 2022, the case was reassigned to the undersigned.

## DISCUSSION

### *Legal Standard*

These motions for summary judgment are decided under the oft-repeated and well-understood standard for review for these matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd,* 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. "Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). With this standard in mind the Court turns to the motions at bar.

### *ECA's Failure to Remit Policy Premiums*

### *Breach of Contract*

The existence of a contract between American Empire and Empire Control Abatement is not disputed. Thus, American Empire has properly set forth a prima facie case for breach of contract by submitting the policies, the audit endorsement, and an affidavit from a representative

9

of the insurer demonstrating underpayment of premiums. *See Evanston Ins. Co. v. Po Wing Hong Food Mkt., Inc.*, 21 A.D.3d 333, 334 (1st Dep't 2005) (accepting same as establishing prima facie case). The sole issue is whether American Empire was entitled to conduct a supplementary audit and, if so, whether ECA is obligated to pay the resulting additional policy premiums. ECA contends only one audit was permitted because they did not withhold any information during the initial audit and because the first audit endorsement was labeled "Final Audit." Nothing in the contract limits American Empire to a single audit.

To the contrary, the parties unambiguously agreed to an audit period encompassing the term of the policy <u>and</u> the three years following its expiration. *See* ECA Counter Statement, DE 108 at ¶ 8.1 ("[American Empire] may examine and audit your books and records as they relate to the policy **at any time** during the policy period and up to three years afterward.") (emphasis added). The provision of this period indicates that the contract contemplates the adjustment of initial audit findings should new information arise within the three-year period following the termination of the policy. This is precisely what occurred here. Despite its contention to the contrary, ECA is not "be[ing] forced to pay for the mistakes of American Empire or its auditor." ECA Opp., DE 117 at 9. ECA is being held to account for its obligations under the contract.

Further, the policy requires that "[ECA] must keep records of the information that [American Empire] need[s] for the earned premium computation, and send us copies of those records at such **times** as we may request." ECA Counter Statement, DE 108 at ¶ 9.1 (emphasis added). The use of the plural "times" helps demonstrate that the contract, by its plain language, provides for multiple audits. Reading the contract as a whole, it is clear that American Empire was entitled to conduct a supplementary audit. *See Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) ("The words and phrases in a contract should be

10

given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.") (*purgandum*[5]).  American Empire plainly had the contractual right to conduct an additional audit to ensure that the initial premium calculation is correct.

ECA's argument for equitable estoppel is unpersuasive.  ECA argues that American Empire should be estopped from collecting the fees sought under the second audit because American Empire issued a "Final Audit" and a "Final Audit Endorsement."  ECA Opp., DE 107 at 5.  ECA contends that it "must be entitled to rely on such finality.  If not, American Empire could potentially subject ECA to an endless barrage of audits for the same policy period despite receiving all requested and relevant information from ECA due to no fault on the part of ECA." *Id.*  This hypothetical "barrage of audits" never occurred.  The three-year period for audits following the expiration of the policy had not yet elapsed and ECA was contractually obligated to submit to the additional audit.

As such, American Enterprise's motion for summary judgment on its breach of contract claim is **GRANTED** and Empire Control Abatement's cross motion for summary judgment is **DENIED**.  Judgment shall be entered in favor of the plaintiff on the claim for unpaid premiums in the amount of $3,814,690.  Further, American Empire is entitled prejudgment interest running from the date of the breach until the date of judgment at a rate of nine percent per annum.  *See American Empire Surplus Lines Ins. Co. v. Barca Restoration Corp.*, No. 18-CV-07033 (RJD)(PK), 2020 WL 1853227, at *5 (E.D.N.Y. Mar. 4, 2020) (providing for recovery of interest on unpaid premiums running from date premium was demanded until date of judgment) (citing N.Y. C.P.L.R. § 5001(a), § 5001(b)); N.Y. C.P.L.R. § 5004).  The operative date for the calculation

---

[5] *See Farmers Property and Casualty Ins. Co. v. Fallon, et al.*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "*purgandum*" to indicate the removal of superfluous marks for the ease of reading).

11

of interest is February 2, 2021, as this is the date demand for payment of the additional premiums was made upon ECA. *See* Demand Letter, DE 101-4.

American Empire also seeks fees. There is no clause in the policies providing for the awarding of fees to a prevailing party, nor has American Empire identified a state statute authorizing the awarding of fees in this matter. *American Empire Surplus Lines Ins. Co. v. DMTB AMG Inc.*, No. 20-CV-3929 (NGG)(RER), 2023 WL 1819318, at *5 (E.D.N.Y. Feb. 8, 2023) ("In New York, attorney fees are largely denied in the absence of an agreement between the parties or a statute authorizing such an award.") (*quoting Petrello v. White*, No. 01-CV-3082 (DRH)(AKT), 2012 WL 2803759, at *3 (E.D.N.Y. July 10, 2012)). The general rule, of course, is that each party bears its own costs. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."). American Empire seeks an award based upon bad faith, however, it has failed to meet the exacting standards for such an award. As such, American Empire's request for attorneys' fees is **DENIED**.

*Declaratory Judgment*

American Empire also seeks a declaratory judgment from the Court:

[T]hat **in the event Empire fails to pay the total amount owed in additional premium**, American Empire has no obligation to **defend and/or indemnify** Empire, or any other person or entity seeking coverage under the American Empire Policies, relative to the Cueva Action, **and/or any other occurrence, offense, claim or suit which has or may be reported to American Empire under the American Empire Policies**.

Second Amended Compl., DE 50 at ¶ 44 (emphases added). It is the law of this Circuit that "an insurance coverage dispute may be resolved with a declaratory judgment, even when liability may be contingent." *Illinois Nat'l Ins. Co. v. Tutor Perini Corp.*, No. 11-CV-431 (PKC), 2011 WL

12

4712079, at *3 (S.D.N.Y. Oct. 7, 2011) (citing *Associated Indem. Corp. v. Fairlchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir.1992)).

Of course, once the amount of the judgment is paid, American Empire will have the duties to defend and indemnify under the policy. Should defendant ECA fail to pay that judgment, of course, American Empire may apply for additional relief. Thus, American Empire's request for a declaratory judgment is denied without prejudice to renewal; ECA's request for a declaratory judgment is **DENIED** as moot.

### *Professional Risk Planners' Liability as ECA's Insurance Broker*

The crux of this dispute is whether PRP is liable for ECA's additional premiums due to American Empire following the supplemental audit. To prevail on this claim, ECA must demonstrate that it has suffered damages proximately caused by PRP. *See Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985) ("To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.") (citations omitted); *Farage v. Associated Ins. Mgmt. Corp.*, 210 A.D.3d 470, 471 (1st Dep't 2022) (dismissing claim where "any negligence or breach of contract by plaintiff's brokers [was] not the proximate cause of plaintiff's alleged damages"); *Laub v. Faessel*, 297 A.D.2d 28, 30-31 (1st Dep't 2002) ("For each of the direct causes of action included in the complaint—fraud, negligent misrepresentation and breach of fiduciary duty—plaintiff must establish that the alleged misrepresentations or other misconduct were the direct and proximate cause of the losses claimed.") (citations omitted). ECA has not and cannot meet this burden.

Though ECA maintains it was blindsided by the additional premiums due and blames PRP for failing to fully explain the rates set forth in the policy, this argument is misplaced. Lorena

Alexander testified that she was aware that the $2 million dollar figure for projected gross receipts reflected in the policy proposal was incorrect at the time she signed the proposal:

> Q: As of June, 2018, when this policy – when this policy period was about to begin, do you have an idea, in your mind, as we sit here today what American Empire…What Empire's gross receipts for the upcoming policy would have been?
> A: Um, in excess, over $15 Million.

Alexander Tr., DE 124-8 at 34:2-12.  Alexander had the opportunity and the duty to correct the figure at the time she signed the proposals.  *See Jin Chai-Chen v. Metro. Life Ins. Co.*, 190 A.D.3d 635, 636 (1st Dep't 2021) ("An insured has the duty . . . to correct any inaccuracies present on the insurance application.") (citing *Minsker v John Hancock Mut. Life Ins. Co.*, 254 NY 333, 338 (1930)); *see also Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 437 (3rd Dep't 2003) ("An insured cannot remain silent while cognizant that his insurance application contains misleading or incorrect information but has a duty to review the entire application and to correct any incorrect or incomplete answers.") (*purgandum*).  Alexander further testified:

> Q: Right. But you're – you're – you're a construction company. You don't have any expertise at all about as to which of your projects are covered under Wrap-up insurance and which aren't?
> A: I have a general idea but I don't know exactly how much.  **But again, the $2 Million sales was something comical that was presented to me, when we were doing over $20 Million in sales**.

Alexander Tr., DE 124-8 at 126:20-127:6 (emphasis added).  Furthermore, she testified:

> Q: Do you recall reviewing [the Contractor Questionnaire]?
> A: Yes.  Signing it.
> Q: Did you agree with the information that was in the document?
> A: I glanced at it.  **I knew it was incorrect** but I signed it because I felt bound to sign it.

*Id.* at 128:13-23 (emphasis added).

Alexander's failures represent the proximate cause of ECA's purported injury.  *See US Pack Network Corp. v. Travelers Prop. Cas.*, 42 A.D.3d 330, 331 (1st Dep't 2007) (dismissing insured's claim where "the damages plaintiff claims here as a result of the alleged breach of

14

contract were not caused by the breach of that contract. They would have been suffered in any event, since even had the broker obtained more inclusive coverage, plaintiff itself failed to provide the timely notice necessary to obtain the benefits."); *see also Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, 75 F. Supp. 3d 575, 591 (E.D.N.Y. 2015); *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 388 (2d Cir. 2006). Had the anticipated gross receipts figure been accurate in the first instance, ECA's premium would have been accurately calculated in the first instance. Indeed, the misstatement of the gross receipts caused the increase in premiums, not any alleged failures to disclose by the insurance broker. *See Mount Vernon Fire Ins. Co. v. Mott*, 179 A.D.2d 626, 627 (2d Dep't 1992) ("[I]nasmuch as the insured himself occasioned the belated increase [in premiums] by underreporting the size of his property, he should not be heard to complain that his broker's failure to notify him of the increase sooner entitles him to indemnification.").

ECA's argument that the short period of time between their receipt of the Policy Proposal for the 2018-2019 year and the expiration date of their current policy should somehow render PRP liable for the additional premiums also fails. Alexander's testimony reflects that this was the standard operating procedure between the parties under the purported "implied contract." To wit:

> Q: I guess prior to presenting you with those two possibilities, the two potential policies, did PRP request any information from Empire to help them procure those two quotes?
> A: They did for questions. I know it had to do with the auto. I can't recall exactly but I did have e-mails with Donna back from, I want to say, April, when she was gathering information. I just can't recall the information quite yet.
> Q: Okay. And you said that those e-mails happened in, approximately, April of that year; is that correct?
> A: **April is when they would start initiating the e-mail that they were going to start working on it**. And we do have to provide information. I just can't recall exactly all of the items. **But every time the renewal came, it would always be just a few days before the expiration**.

15

Alexander Tr., DE 124-8 at 107:10-108:8 (emphases added). That time was of the essence for ECA to ensure that its projects currently underway continued uninterrupted does not absolve it of Alexander's decision to sign the proposals containing information she knew was false. Similarly, Alexander admitted that PRP never provided ECA with full insurance policies during their seventeen-year relationship, vitiating any claim based on this purported "failure" of PRP. *See id.* at 113:21-114:5.

As such, PRP's motion for summary judgment is **GRANTED** and ECA's motion for summary judgment is **DENIED**. Each side shall bear its own fees and costs.

### *Coverage of Additional Insureds*

Several motions address whether American Empire is obligated to defend or indemnify Gateway and 3TC in the *Cueva* Action or any other action arising under the ECA policies. In New York, "an insurer's duty to defend is the same regardless of whether the defendant is a named insured in the policy or is instead an additional insured." *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 49 (S.D.N.Y. 2015); *see Olin Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 224 (S.D.N.Y. 2016) ("Under New York law, when one party commits a material breach, the other party is relieved, or excused, from its further performance obligations.") (*purgandum*). The Coverage Defendants are, therefore, not entitled to a defense in the *Cueva* Action unless and until ECA remits the premiums due to American Empire. *See Am. Empire Surplus Lines Ins. Co. v. Disano Demolition Co.*, No. 18-CV-5047 (NGG)(CLP), 2021 WL 21722, at *1 (E.D.N.Y. Jan. 4, 2021) ("The court also DECLARES that American Empire has no duty to defend or indemnify Disano under the American Empire policies for which Disano failed to pay the premium."). Thus, once the premium is paid, American Empire's obligation to

16

provide defense and indemnification shall continue; failing that, American Empire has no such obligation.

### CONCLUSION

For the foregoing reasons: (1) Plaintiff American Empire's motion for summary judgment on its claim for breach of contract against defendant ECA is **GRANTED** and judgment is entered in favor of plaintiff in the amount of $3,814,690 plus pre-judgment interest running from February 2, 2021; (2) Plaintiff American Empire's motion for summary judgment seeking a declaration with respect to its duties to defend and indemnify under the policies is **DENIED** without prejudice to renewal should defendant ECA fail to satisfy the judgment; (3) American Empire's motions for fees is **DENIED**; (4) Defendant ECA's motion for summary judgment is **DENIED**; (5) The PRP defendants' motion for summary judgment is **GRANTED** in its entirety and ECA's cross-motion against them is **DENIED** in its entirety; and (6) The Coverage Defendants' cross-motion for summary judgment is **DENIED**.

All parties shall bear their own fees and costs.

**SO ORDERED.**

Dated:  August 31, 2023
         Central Islip, New York

                                                      /s/ Gary R. Brown
                                                      GARY R. BROWN
                                                      UNITED STATES DISTRICT JUDGE